**ABIR COHEN TREYZON SALO, LLP**
Boris Treyzon, Esq. (SBN 188893)
Douglas Rochen, Esq. (SBN 217231)
Katrina N. Yu, Esq. (SBN 284362)
Evan Koncan, Esq. (SBN 337011)
16001 Ventura Blvd, Suite 200
Encino, CA 91436
Telephone:  (424) 288-4367
Facsimile:   (424) 288-4368

Attorneys for Plaintiff JENNIFER KERNS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JENNIFER KERNS, an individual;<br><br>       Plaintiff,<br><br>   vs.<br><br>NUTRIBULLET, L.L.C., a California Limited Liability Company, CAPITAL BRANDS, L.L.C., a California Limited Liability Company, HOMELAND HOUSEWARES, L.L.C., a California Limited Liability Company, CALL TO ACTION, L.L.C., a California Limited Liability Company, NUTRILIVING, L.L.C., and DOES 1 through 10, inclusive,<br><br>      Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br>1. **Negligence**<br>2. **Strict Liability – Failure to Warn**<br>3. **Strict Liability – Manufacturing Defect**<br>4. **Strict Liability – Design Defect**<br>5. **Breach of Implied Warranty of Merchantability**<br>6. **Unfair Competition in Violation of Bus. & Prof. Code 17200, et seq.**<br><br>**DEMAND FOR JURY TRIAL** |

Comes now Plaintiff JENNIFER KERNS  and hereby alleges as follows:

## PARTIES

1.      Plaintiff JENNIFER KERNS ("Plaintiff") was, and at all relevant times hereto is, an individual person and resident in the County of Chittenden, state of Vermont.

**2.      Defendants**

a.      Defendant NUTRIBULLET, L.L.C., is a California Limited Liability Corporation with its principal office in Los Angeles, California. Defendant NUTRIBULLET, L.L.C., is in the business of and did design, develop, formulate, manufacture, test, package, promote, label, advertise, market, instruct on, warn about, distribute, supply and/or sell products and blenders marketed under the NutriBullet and MagicBullet brand names, and other substantially similar Bullet products, amongst other brands. These products are intended for use as household blenders.

b.      Defendant CAPITAL BRANDS, L.L.C., is a California Limited Liability Company, with its principal office in Los Angeles, California. Defendant CAPITAL BRANDS, L.L.C., is in the business of and did design, develop, formulate, manufacture, test, package, promote, label, advertise, market, instruct on, warn about, distribute, supply and/or sell products and blenders marketed under the NutriBullet and MagicBullet brand names, amongst other brands. These products are intended for use as household blenders.

c.      Defendant HOMELAND HOUSEWARES, L.L.C., is a California Limited Liability Company, with its principal office in Los Angeles, California. Defendant HOMELAND HOUSEWARES, L.L.C., is in the business of and did design, develop, formulate, manufacture, test, package, promote, label, advertise, market, instruct on, warn about, distribute, supply and/or sell products and blenders marketed under the NutriBullet and MagicBullet brand names, amongst other brands. These products are intended for use as household blenders.

COMPLAINT FOR DAMAGES

d.      Defendant CALL TO ACTION, L.L.C., is a California Limited Liability Company, with its principal office in Los Angeles, California. CALL TO ACTION, L.L.C., is in the business of and did design, develop, formulate, manufacture, test, package, promote, label, advertise, market, instruct on, warn about, distribute, supply and/or sell products and blenders marketed under the NutriBullet and MagicBullet brand names, amongst other brands. These products are intended for use as household blenders.

e.      Defendant NUTRILIVING, L.L.C., is a California Limited Liability Company, with its principal office in Los Angeles, California. Defendant NUTRILIVING, L.L.C., is in the business of and did design, develop, formulate, manufacture, test, package, promote, label, advertise, market, instruct on, warn about, distribute, supply and/or sell products and blenders marketed under the NutriBullet and MagicBullet brand names, amongst other brands. These products are intended for use as household blenders.

f.      Collectively, NUTRIBULLET, L.L.C., a California Limited Liability Company, CAPITAL BRANDS, L.L.C., a California Limited Liability Company, HOMELAND HOUSEWARES, L.L.C., a California Limited Liability Company, CALL TO ACTION, L.L.C., a California Limited Liability Company, NUTRILIVING, L.L.C., a California Limited Liability Company shall be referred to as "Defendants" or "All Defendants" herein.

3.      The true names, identities and capacities of those defendants designated as DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiff, who sues said defendants by such fictitiously designated names. Plaintiff is informed and believes and, on the basis thereof, alleges that each of the Defendants designated herein as a DOE was a California resident and in some way was legally responsible for the events herein alleged. Plaintiff will seek leave of Court to set forth the true names, identities and capacities of defendants designated as DOES 1 through 10, inclusive, when same has been ascertained. References to "Defendants" or "All

Defendants" herein include the Defendants listed in Paragraph 2, above, in addition to DOES 1 through 10, inclusive.

4.    Plaintiff is informed and believes and on the basis thereof alleges Defendants and DOES 1 through 10, inclusive, and each of them, were responsible for the design, manufacturing, development, research, testing, inspection, packaging, mass-production, advertisement, promotion, supply, distribution, sale, delivery, instructions on, warnings about, and labeling of NutriBullet blenders, including the blender which injured Plaintiff as described herein.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(a)(2) because the Parties are completely diverse and the amount in controversy exceeds the $75,000.00 minimum jurisdictional requirement, exclusive of costs and attorney's fees.

6.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(1), as all Defendants named herein are residents of the State of California, in which this district is located.

7.    Venue is appropriate in this County because each and every one of the Defendants is a limited liability company, originating and operating out of the County of Los Angeles, State of California.  Every manager, member and agent for each and every one of the Defendants operates from their principal place of business at 11755 Wilshire Boulevard, Suite 1200, Los Angeles, California 90025.

8.    Venue is also proper because Defendants' primary place of business is the site of many of the unlawful acts which caused Plaintiff's harm took place, specifically the designing, developing, formulating, manufacturing, testing, packaging, promoting, labeling, advertising, marketing, instructing on, warning about, distributing, supplying and/or selling products and blenders marketed under the NutriBullet and MagicBullet brand names, amongst other brands.

COMPLAINT FOR DAMAGES

**GENERAL ALLEGATIONS**

9.    This action arises from Plaintiff JENNIFER KERNS' use of Defendants' defective product, the NutriBullet 600 blender which resulted in serious injuries to Plaintiff's right hand.

10.    On May 5, 2022, Plaintiff was using the NutriBullet blender to prepare a golden milk latte consisting of Gaia brand Golden Milk mix, maple syrup, Thorn brand collagen powder, and water.

11.    All NutriBullet blenders, including the one used by Plaintiff, have three components: a powered base unit which contains a high-speed motor ("base") (Figure 1), a plastic cup-shaped container that holds ingredients to be blended ("canister") (figure 2), and a plastic lid mounted with metal blades ("blade assembly") (Figure 3), which screws into the cup and is energized by the base. This design is used across all models of NutriBullet blenders, including the Magic Bullet, NutriBullet 600, NutriBullet 900, NutriBullet Rx, and other blenders in the NutriBullet line.  Courts have repeatedly stated blenders across the NutriBullet product line are substantially similar, including the court's written decision in *Littlefield v. NutriBullet, et al.,* 2:16-cv-06894-DDP (SSx) (Dkt. No. 165), which specifically ruled the Magic Bullet, NutriBullet 600, NutriBullet 900, NutriBullet Sport, and NutriBullet University Pro are all substantially similar.  The alleged defects set forth herein are a result of, *inter alia*, the closed canister design, which is substantially similar across the entire NutriBullet product line, including the subsequently designed and released NutriBullet Rx and Prime.  The alleged defects are also a result of defective plastic materials in the canister which are the same or substantially similar across the entire NutriBullet blender product line.

COMPLAINT FOR DAMAGES

*Figure 1*  *Figure 2*  *Figure 3*

  

a.    On or around March 23, 2004, a design patent (no. D487,668) was issued for a "blender and canister set." Leonard "Lenny" Sands was named as the inventor, and the patent was assigned to Lohan Media LLC.

b.    On or around January 26, 2004, a Design Patent Assignment was executed which transferred Lohan Media, LLC's interest in patent no. D487,668 (then identified under Design Patent Application No. 29/185,182) to Homeland Housewares, LLC.

c.    Between January 11, 2005 and February 17, 2009, several design patents (nos. D500,633; D501,759; D517,862; D519,321; D521,802; D532,255; D544,427; and D586,620) were issued for items described as "mugs," "blender base and containers," and "mug with ring." Leonard "Lenny" Sands was named as the inventor, and the patents were assigned to Homeland Housewares, LLC[1].

d.    On or around June 19, 2012, Homeland Housewares, LLC registered a trademark for the trademark "Nutri Bullet" (serial no. 852,15434).

e.    Homeland Housewares, LLC and Defendant NutriBullet, LLC are wholly owned subsidiaries of Capital Brands, LLC, a California limited liability company. Capital Brands, LLC is a privately-owned company and not publicly traded or listed. At all relevant times, Defendant NutriBullet, LLC worked in concert with Homeland Housewares, LLC and Capital Brands, LLC with one another and/or as each other's agents in connection with NutriBullet blenders.

---

[1] See https://www.nutribullet.com/patents.html (as of April 9, 2018).

- 6 -
COMPLAINT FOR DAMAGES

12.     After the blade assembly is screwed onto the cup, the cup and the blade assembly are then inverted and pressed down into the power base, which initiates the movement of the blades affixed to the lid. If the cup and blade assembly is twisted while on the power base, plastic tabs on the assembly will lock it in place on the power base, creating an open electrical circuit to allow the high-speed motor to operate the blades. Twisting of the assembly in the opposite direction should bring the motor to a stop, release the assembly, and disengage the motor.

13.     Each NutriBullet blender, including the NutriBullet 600 blender, comes with a User Guide and Recipe Book, which encourage use of various ingredients, and contains recipes and instructions for making hot recipes, including soups, with the blender.

14.     On May 5, 2022, Plaintiff was using the Nutribullet 600 to prepare a golden milk latte consisting of Gaia brand Golden Milk mix, maple syrup, Thorn brand collagen powder, and water.

15.     All of the ingredients, but the water, were cold or room temperature. The water was lukewarm.

16.     Plaintiff attached the blade holder to the canister and placed the canister on the base.

17.     Plaintiff inverted and placed the sealed canister onto the motor base.

18.     Plaintiff pressed down and twisted the canister with her right hand on the top right of the canister.

19.     The machine ran for about fifteen (15) seconds.

20.     Simultaneously, as the blender ran, the friction and resulting heat from the rapidly spinning blades caused the pressure in the canister to build up.

21.     After approximately 15 seconds, Plaintiff heard a loud pop and the canister suddenly and unexpectedly shot off the motor base, exposing the still-spinning extractor blade.

COMPLAINT FOR DAMAGES

22.    Plaintiff's right hand came into contact with the now-exposed, still-spinning blades, causing lacerations to her right pinky.

23.    Immediately after the incident occurred, Plaintiff was transported to the emergency department via ambulancefor emergency treatment where she was given stitches amongst other things.

24.    Plaintiff's injuries will likely result in permanent scarring and functional limitations that has and will likely continue to affect her activites of daily living.

25.    The lacerations resulting from the incident have caused and continues to cause Plaintiff a great deal of physical, emotional, and/or psychological pain and suffering.

26.    Upon information and believe, Defendants have been aware of the dangers and risk of injuries to its users caused by NutriBullet blenders since at least 2011, but no later than at least August 2014.

27.    Specifically, that the blade assembly can forcefully separate from the canister, and that the canister can explode, both when it is affixed to the base and when it is not affixed to the base.

28.    Plaintiff was never informed by Defendants of the risk of severe bodily injury associated with using a NutriBullet blender.

29.    These dangers are caused by and are a result of, among other factors, the defective closed canister design and defective materials used in the canisters.

30.    Upon information and believe, the canister's design and materials' defects are the same or substantially similar across the entire NutriBullet blender product line:

a.    The NutriBullet blenders are all based on the same design and the various models are substantially similar to one another, and have, in some form, been available in the marketplace since 2004.  The substantially similar NutriBullet blender models include, but are not limited to: the MagicBullet, MagicBullet Mini,

NutriBullet Original (600/ NB-101), NutriBullet Pro 900, the NutriBullet Prime, NutriBullet Sport, NutriBullet Rx, NutriBullet University Pro, Baby Bullet, Veggie Bullet, Party Bullet, NutriBullet Select, NutriBullet Lean, NutriBullet Max, NutriBullet Balance, NutriBullet 1000 and NutriBullet 1200 (collectively "the NutriBullet blenders").

b.     The NutriBullet blenders all have a closed canister, similar blade configuration, and similar power base to the blender which is at issue in this litigation.   All of the NutriBullet blenders use a closed canister and have a blender/extractor-style blade like that of the NutriBullet blender at issue and relating to the alleged product defect herein.   Accordingly, all NutriBullet blenders have a substantially similar design, which is a substantial factor in the injuries caused by the NutriBullet products.

c.     The process and mechanism of failure is substantially similar across all product failures of which Plaintiff is aware.   With respect to the product defects, processes, and mechanisms of failure, the entire NutriBullet product line is substantially similar in all factors relevant to the product failures.   To wit:

- The entire NutriBullet blender product line includes a defective closed-canister design;
- The canisters for the entire NutriBullet blender product line are designed and manufactured with the same or substantially similar plastic products which degrade and deform over time, and which are not safe for their intended use;
- The entire NutriBullet blender product line contains motors which create heat that is transferred into the canister and contents of the canister, sometimes heating the contents of the canister to dangerous temperatures;

COMPLAINT FOR DAMAGES

- The entire NutriBullet blender product line utilizes rapidly spinning blades, which rotate at tens of thousands of rotations per minute, which create friction during use which creates heat that is also transferred to the contents of the canister, sometimes heating the contents to dangerous temperatures;

- The closed canister design across the entire NutriBullet product line is sealed and does not contain any pressure relief mechanism;

- Increases in temperature in the closed canister, which is included and is the same or substantially similar across the entire NutriBullet blender product line, result in an increase in pressure within the canister. In many instances, including the incident which injured Plaintiff, the increase in pressure results in the forceful and unintended separation of the canister from the blade assembly, which can lead to various injuries, primarily burns and lacerations;

- The canister design is also defective because of the beveled shape of the threaded area of the canister where the canister screws into the blade assembly. This beveled shape results in reduced contact between the threaded portions of the canister and blade assembly such that separations between the canister and blade assembly are more likely to occur, and are more likely to occur at lower canister pressures;

- NutriBullet blenders, across all product lines are also defective because the vibrations and forces from the motor

COMPLAINT FOR DAMAGES

of the products cause the canisters to loosen or unscrew from the blade assembly, making it more likely that separations between the blade assembly and canister occur, and occur at lower canister pressures;

• Across the entire NutriBullet blender product line, the risk of these dangerous heat and pressure induced product failures increases with product age;

• Across the entire NutriBullet blender product line, the risk of these dangerous heat and pressure induced product failures increases with the duration of time a user runs or activates the blender;

• The use of very cold ingredients in the sealed closed canisters also creates a risk of danger to users as the drop in temperature in the sealed closed canister causes a drop in pressure which strains and deforms the canister and causes the canister and blade assembly to disconnect.

      d.    The design, testing, analysis and complaints regarding defects and injuries arising therefrom of the NutriBullet blender that is the subject of this litigation is substantially similar to the NutriBullet blenders that have been on the marketplace for almost fifteen (15) years.

      31.    Defendants were aware of the risk of injuries associated with their other products existing under the same set of patents as Plaintiff's blender, the Magic Bullet blender.

      32.    In a report published on SaferProducts.gov in 2011, a Magic Bullet consumer described injuries she suffered when she was blending hot sweet potatoes with her Magic Bullet blender. The consumer report stated that when the user began to unscrew the lid of the Magic Bullet blender, the contents exploded in a six-foot radius around her kitchen, causing burns and other injuries. As set forth in the report,

this Magic Bullet blender consumer personally contacted Defendant Homeland Housewares, LLC, and the parent company for Defendant NutriBullet, LLC, on October 20, 2011.

33.    The report was sent by Defendant Homeland Housewares, LLC, to the Consumer Product Safety Commission in October 2011.

34.    Accordingly, Defendants fraudulently concealed and intentionally failed to disclose to Plaintiff the defective nature of the NutriBullet blenders, including the NutriBullet blender model at issue herein, in violation of common law. Additionally, other similar prior incidents were either widely-covered in the media or published on Saferproducts.gov:

a.    On January 31, 2014, a NutriBullet user in Palmdale, California, filed a lawsuit against Defendant alleging that she suffered severe burns when her NutriBullet blender unexpectedly exploded on October 21, 2013.   Defendant NutriBullet responded to the lawsuit and participated in the litigation, putting Defendants on notice of the risk of injuries of this type and mechanism caused by its products.

b.    In a report published on SaferProducts.gov in January 2015, a 45-year-old woman describes that in August 2014, she suffered second- or third-degree burns on her face, forehead and neck when her NutriBullet exploded while blending.

c.    In July 2015, a woman in England suffered burn injuries to her face after her NutriBullet blender malfunctioned.  This incident was widely covered by the media, and a NutriBullet representative made a public statement regarding this incident, indicating that NutriBullet had knowledge of this incident.

d.    In a report published on SaferProducts.gov in January 2016, a NutriBullet user described how they were unable to unscrew the canister of their machine from the blade assembly due to pressure.  Later that evening, the canister exploded.  Fortunately, the user suffered no injuries.

COMPLAINT FOR DAMAGES

e.    There are numerous reviews on Amazon.com for NutriBullet blenders wherein the reviewer describes how the canister exploded during normal use, often spraying hot food product onto the user.  These reviews and the incidents of explosion pre-date the explosion that is the subject of this lawsuit.

f.    As early as May 2014, if not earlier, Defendants received complaints of dangerous explosions involving product defects, specifically over-pressurization of NutriBullet canisters from foreseeable uses, from customers. Defendant documented these complaints within their internal databases, which have become available to Plaintiff through litigation.

35.    Plaintiff is informed and believes, and thereon alleges, that Defendants are in possession of records of thousands of instances of prior complaints about malfunctions in the NutriBullet model blender used by Plaintiff, and in substantially similar models of blenders.

36.    Plaintiff is informed and believes these records of prior complaints are maintained in an internal database accessible by Defendants.

37.    Plaintiff is informed and believes that these records of thousands of prior complaints regarding the subject model blender and substantially similar NutriBullet blenders will definitely establish prior knowledge by Defendants that the subject model blender and substantially similar NutriBullet blenders posed a serious risk of causing catastrophic injuries to users during reasonably foreseeable use, and that despite this knowledge, Defendants acted despicably and maliciously by continuing to sell dangerous and defective blenders to consumers who could be hurt by these dangerous NutriBullet blenders.

38.    Protective orders prevent Plaintiff from attaching or further describing said incidents herein, but Plaintiff can produce records of prior incidents with a court order or make records of incidents available for *in camera* review at the Court's request.

COMPLAINT FOR DAMAGES

a.    Abir Cohen Treyzon Salo, LLP, Plaintiff's counsel represents other clients with claims against NutriBullet, who have or will file lawsuits against NutriBullet for injuries they suffered when their NutriBullet blender(s) exploded. ACTS currently represents over 100 people injured by dangerous and defective NutriBullet blenders.  These incidents, involving the subject model blender or substantially similar NutriBullet blenders, include, but are not limited to:

i.    On May 1, 2015, a NutriBullet Pro 900 Series user suffered burns after their machine exploded.

ii.    On December 24, 2015, a NutriBullet Pro 900 Series user suffered burns after their machine exploded.

iii.    On January 2016, a NutriBullet Pro 900 Series user suffered burns after their machine exploded.

iv.    On January 21, 2016, a NutriBullet Pro 900 Series user suffered lacerations after their machine exploded.

v.    On March 9, 2016, a NutriBullet Pro 900 Series user suffered burns after their machine exploded.

vi.    On April 4, 2016, a NutriBullet 600 user suffered burns after their machine exploded.

vii.    On April 15, 2016, a NutriBullet user suffered burns after their machine exploded.

viii.    On June 14, 2016, a NutriBullet 600 user suffered lacerations after their machine exploded.

ix.    On July 11, 2016, a NutriBullet 600 user suffered lacerations after their machine exploded.

x.    In August 2016, a NutriBullet 600 user suffered burns after their machine exploded.

xi.    On August 1, 2016, a NutriBullet Pro 900 Series user suffered lacerations after their machine exploded.

COMPLAINT FOR DAMAGES

1    xii.    On September 10, 2016, a NutriBullet Pro 900 Series user
2  suffered burns after their machine exploded.

3    xiii.    On September 14, 2016, a NutriBullet Pro 900 Series user
4  suffered burns after their machine exploded.

5    xiv.    On December 31, 2016, a NutriBullet Rx user suffered
6  burns after their machine exploded.

7    xv.    On January 1, 2017, a NutriBullet user suffered lacerations
8  after their machine exploded.

9    xvi.    On January 23, 2017, a NutriBullet Rx user suffered
10  lacerations after their machine exploded.

11    xvii.    On January 28, 2017, a NutriBullet 600 user suffered
12  burns after their machine exploded.

13    xviii.    On March 1, 2017, a NutriBullet user suffered burns after
14  their machine exploded.

15    xix.    On March 21, 2017, a NutriBullet 600 user suffered burns
16  after their machine exploded.

17    xx.    On April 10, 2017, a NutriBullet Pro 900 Series user
18  suffered burns after their machine exploded.

19    xxi.    On April 20, 2017, a NutriBullet Rx user suffered burns
20  after their machine exploded.

21    xxii.    On April 28, 2017, a NutriBullet 600 user suffered burns
22  after their machine exploded.

23    xxiii.    On May 1, 2017, a NutriBullet Pro 900 Series user
24  suffered burns after their machine exploded.

25    xxiv.    On May 1, 2017, a NutriBullet Pro 900 Series user
26  suffered burns after their machine exploded.

27    xxv.    On May 1, 2017, a NutriBullet 600 user suffered
28  lacerations after their machine exploded.

COMPLAINT FOR DAMAGES

1          xxvi.    On May 3, 2017, a NutriBullet user suffered burns after
2     their machine exploded.

3          xxvii.   On May 7, 2017, a NutriBullet user suffered lacerations
4     after their machine exploded.

5          xxviii.  On May 27, 2017, a NutriBullet Pro 900 Series user
6     suffered burns after their machine exploded.

7          xxix.    On May 30, 2017, a NutriBullet 600 user suffered burns
8     after their machine exploded.

9          xxx.     On June 1, 2017, a NutriBullet user suffered burns after
10    their machine exploded.

11         xxxi.    On June 1, 2017, a NutriBullet Pro 900 Series user
12    suffered burns after their machine exploded.

13         xxxii.   On June 5, 2017, a NutriBullet Pro 900 Series user
14    suffered burns after their machine exploded.

15         xxxiii.  On June 7, 2017, a NutriBullet Pro 900 Series user
16    suffered burns after their machine exploded.

17         xxxiv.   On June 19, 2017, a NutriBullet Prime user suffered burns
18    after their machine exploded.

19         xxxv.    On June 27, 2017, a NutriBullet 600 user suffered
20    lacerations after their machine exploded.

21         xxxvi.   On June 28, 2017, a NutriBullet user suffered laceration
22    and fractured thumb after their machine exploded.

23         xxxvii.  On June 30, 2017, a NutriBullet Prime user suffered burns
24    after their machine exploded.

25         xxxviii. On July 5, 2017, a NutriBullet Rx user suffered burns
26    after their machine exploded.

27         xxxix.   On July 10, 2017, a NutriBullet 600 user suffered burns
28    after their machine exploded.

COMPLAINT FOR DAMAGES

xl. On July 14, 2017, a NutriBullet user suffered burns after their machine exploded.

xli. On July 19, 2017, a NutriBullet Pro 900 Series user suffered burns after their machine exploded.

xlii. On August 1, 2017, a NutriBullet Pro 900 Series user suffered burns after their machine exploded.

xliii. On August 16, 2017, a NutriBullet Pro 900 Series user suffered burns and laceration after their machine exploded.

xliv. On August 16, 2017, a NutriBullet 600 user suffered burns after their machine exploded.

xlv. On August 25, 2017, a NutriBullet Pro 900 Series user suffered burns after their machine exploded.

xlvi. On September 11, 2017, a NutriBullet Pro 900 Series user suffered lacerations after their machine exploded.

xlvii. On September 12, 2017, a NutriBullet 600 user suffered lacerations and lost three teeth after their machine exploded.

xlviii. On September 20, 2017, a NutriBullet 600 user suffered lacerations after their machine exploded.

xlix. On September 22, 2017, a NutriBullet Pro 900 Series user suffered lacerations and broken finger after their machine exploded.

l. On October 7, 2017, a NutriBullet Pro 900 Series user suffered burns after their machine exploded.

li. On October 7, 2017 a NutriBullet 600 user suffered burns after their machine exploded.

lii. On October 28, 2017, a NutriBullet user suffered burns after their machine exploded.

liii. On October 30, 2017, a NutriBullet user suffered burns after their machine exploded.

COMPLAINT FOR DAMAGES

liv.    On November 4, 2017, a NutriBullet 600 user suffered burns after their machine exploded.

lv.    On November 4, 2017, a NutriBullet 600 user suffered burns after their machine exploded.

lvi.    On November 5, 2017, a NutriBullet user suffered lacerations after their machine exploded.

lvii.    On November 6, 2017, a NutriBullet 600 user suffered burns after their machine exploded.

lviii.    On November 8, 2017, a NutriBullet 600 user suffered burns after their machine exploded.

lix.    On November 15, 2017, a NutriBullet Rx user suffered burns after their machine exploded.

lx.    On November 17, 2017, a NutriBullet 600 user suffered lacerations after their machine exploded.

lxi.    On November 19, 2017, a NutriBullet Pro 900 Series user suffered burns after their machine exploded.

lxii.    On November 25, 2017, a NutriBullet 600 user suffered burns after their machine exploded.

lxiii.    On November 30, 2017, a NutriBullet user suffered burns after their machine exploded.

lxiv.    On December 3, 2017, a NutriBullet 600 user suffered lacerations after their machine exploded.

lxv.    On December 18, 2017, a NutriBullet 600 user suffered lacerations after their machine exploded.

lxvi.    On December 23, 2017, a NutriBullet 600 user suffered burns after their machine exploded.

lxvii.    On December 23, 2017, a NutriBullet Pro 900 Series user suffered burns after their machine exploded.

COMPLAINT FOR DAMAGES

lxviii. On December 31, 2017 a NutriBullet user suffered burns after their machine exploded.

lxix. On January 4, 2018, a NutriBullet user suffered burns after their machine exploded.

lxx. On January 19, 2018, a NutriBullet Prime user suffered burns after their machine exploded.

lxxi. On January 20, 2018, a NutriBullet user suffered burns after their machine exploded.

lxxii. On January 28, 2018, a NutriBullet user suffered burns after their machine exploded.

lxxiii. On January 28, 2018, a NutriBullet user suffered burns after their machine exploded.

lxxiv. On January 29, 2018, a NutriBullet user suffered burns after their machine exploded.

lxxv. On January 31, 2018, a NutriBullet user suffered burns after their machine exploded.

lxxv. On February 1, 2018, a NutriBullet user suffered burns after their machine exploded.

lxxvi. On February 7, 2018, a NutriBullet user suffered burns after their machine exploded.

lxxvii. On February 19, 2018, a NutriBullet user suffered lacerations after their machine exploded.

lxxviii. On February 22, 2018, a NutriBullet user suffered burns after their machine exploded.

lxxix. On February 23, 2018, a NutriBullet user suffered lacerations after their machine exploded.

lxxx. On April 3, 2018, a NutriBullet user suffered burns after their machine exploded.

COMPLAINT FOR DAMAGES

lxxxi. On April 10, 2018, a NutriBullet user suffered burns after their machine exploded.

lxxxii. On April 23, 2018, a NutriBullet user suffered lacerations after their machine exploded.

On May 8, 2018, a NutriBullet user suffered lacerations after their machine exploded.

lxxxiv. On May 20, 2018, a NutriBullet user suffered burns after their machine exploded.

lxxxv. On May 28, 2018, a NutriBullet user suffered lacerations after their machine exploded.

lxxxvi. On June 4, 2018, a NutriBullet user suffered burns after their machine exploded.

lxxxvii. On July 8, 2018, a NutriBullet user suffered burns after their machine exploded.

lxxxviii. On July 8 2018, a NutriBullet user suffered burns after their machine exploded.

lxxxix. On July 12, 2018, a NutriBullet user suffered lacerations after their machine exploded.

lxxxx. On July 15, 2018, a NutriBullet user suffered lacerations after their machine exploded.

lxxxxi. On August 26, 2018, a NutriBullet user suffered burns after their machine exploded.

lxxxxii. On September 19, 2018, a NutriBullet user suffered burns after their machine exploded.

lxxxxiii. On October 21, 2018, a NutriBullet user suffered burns after their machine exploded.

lxxxxiv. On December 11, 2018, a NutriBullet user suffered burns after their machine exploded.

COMPLAINT FOR DAMAGES

lxxxxv. On January 8, 2019, a NutriBullet user suffered burns after their machine exploded.

lxxxxvi. On February 3, 2019, a NutriBullet user suffered burns after their machine exploded.

lxxxxvii. On February 22, 2019, a NutriBullet user suffered burns after their machine exploded.

lxxxxviii. On February 28, 2019, a NutriBullet user suffered burns after their machine exploded.

lxxxxix. On March 29, 2019, a NutriBullet user suffered burns after their machine exploded.

xc. On April 17, 2019 a NutriBullet user suffered lacerations after their machine exploded.

xci. On April 17, 2019 a NutriBullet user suffered lacerations after their machine exploded.

xcii. On June 11, 2019 a NutriBullet user suffered burns after their machine exploded.

xciii. On June 12, 2019 a NutriBullet user suffered burns after their machine exploded.

xciv. On July 12, 2019 a NutriBullet user suffered lacerations after their machine exploded.

xcv. On September 24, 2019, a NutriBullet user suffered burns after their machine exploded.

xcvi. On November 28, 2019, a NutriBullet user suffered burns after their machine exploded.

xcvii. On November 20, 2020, a NutriBullet user suffered lacerations after their machine exploded.

39. Notwithstanding their knowledge of the immediate and severe danger posed by their products to consumers, Defendants failed to do anything about the

defective nature of their blenders as to prevent the type of injuries now suffered by Plaintiff.

40.    Upon information and believe, possible actions that could have been taken by Defendants include, but are not limited to:

        a.    Issuing warnings;

        b.    Changing the defective design; or,

        c.    Recalling of the NutriBullet blenders.

41.    By not undertaking any of these tasks, Defendants consciously and knowingly disregarded the safety of their users, including Plaintiff, yet continued to collect profits from the sale of over 40 million units worldwide.

42.    The consumer complaints regarding malfunctions of Defendants' NutriBullet blenders, put Defendants on notice of the defects in its products, but Defendants elected to continue sale of its products to the detriment of its customers, putting them at risk of significant and foreseeable injuries.

43.    Defendants were undisputedly aware that their NutriBullet blenders created the same type of risk(s) which injured Plaintiff, prior to Plaintiff's injuries, and therefore, Defendants fraudulently concealed and intentionally failed to disclose such information to Plaintiff, in violation of common law.

44.    Defendants were aware, or should have been aware, the defective canister design and materials were substantial factors in creating the dangers presented by their products.

45.    Given the amount of complaints Defendants received prior to Plaintiff's injuries, Defendants knowingly and willfully disregarded Plaintiff's safety because they were aware of the probable dangerous consequences of their conduct (the concealment of the dangers of using the NutriBullet blenders), and they willfully failed to avoid and/or disclose those consequences by continuing to sell the defective NutriBullet blenders.

COMPLAINT FOR DAMAGES

46.    As discussed *supra*, despite knowledge of these complaints from consumers, Defendants covered up reports of these injuries, by failing to notify the United States Consumer Product Safety Commission while simultaneously keeping such information from their consumers and future consumers.

47.    Defendants continued to put profits ahead of consumers' safety for years and continues to defraud the general public by their collective failure to conduct a proper recall or to inform consumers of the blenders' dangerous propensities.

48.    Defendants elected not to warn their consumers, and/or recall or change their products to prevent consumers from suffering injuries, and as a result Plaintiff was harmed.

## **FIRST CLAIM FOR RELIEF**

### **Negligence**

**(Plaintiff JENNIFER KERNS  as to ALL DEFENDANTS and DOES 1 – 10)**

49.    Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein.

50.    At all times relevant times to this action, Defendants and DOES 1 – 10, inclusive, had a duty to exercise reasonable care, and to comply with the existing standards of care, in the preparation, design, development, formulation, manufacture, testing, packaging, promotion, labeling, advertising, marketing, instruction on use, warnings, distribution, supply and/or sale of products and blenders marketed under the NutriBullet and MagicBullet brand names, which Defendants introduced into the stream of commerce to be used as household blenders.

51.    This included a duty to ensure that users would not suffer from unreasonable dangerous accidents while using the machine.

52.     At all times relevant to this action, Defendants had a duty to ensure their products did not pose a significant risk of bodily harm and/or adverse events to their users.

53.     At all relevant times, Defendants, knew or reasonably should have known that their products were unreasonably dangerous and defective when utilized for the products' intended use and purpose, including but not limited to the following: a) The blade assembly may operate even when the canister is not locked into the base or after the canister has separated from or shot off the base, creating the potential to cause severe lacerations to consumers; b) that the reasonably foreseeable operation of the device will cause the canister to over-pressurize and its contents to heat up and pose a danger to anyone around if the ultra-heated contents erupt from the canister as a result of a failure of the machine and, c) that the warnings and labels on its blenders and its user manual, if any at all, are inadequate to alert the consumer of the dangers in using said machine.

54.     At all relevant times, Defendants knew or reasonably should have known that their products were unreasonably dangerous and defective when used for its intended purpose, and that foreseeable users, such as Plaintiff, would be exposed to harm and severe injuries as a result of Defendants' failure to exercise reasonable care.

55.     Defendants failed to modify or otherwise retrofit their products, including but not limited to making it safe for use, and otherwise failed to warn consumers of the dangers which Defendants knew or should have known existed.

56.     The likelihood and gravity of harm presented by the NutriBullet blender outweighs the utility of its design.

57.     The product's defects alleged above were substantial factors contributing to the cause of injuries and damages suffered by Plaintiff.

58.     As a direct and proximate cause of Defendants' negligence, Plaintiff suffered, and will continue to suffer special damages and general damages in an amount to be proven at trial.

59.     As a direct and proximate result of said defects, Plaintiff was required to seek, and continues to seek medical treatment for her severe and permanent injuries, all to Plaintiff's further detriment, in a sum to be shown according to proof

60.     Consequently, by reason of Defendants' negligence, recklessness, willfulness, wantonness, and carelessness, Plaintiff was unable to perform her job and has incurred, and will continue to incur, a loss of income, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses all the Plaintiff's further detriment in a sum according to proof.

61.     As a direct and proximate result of Defendants' negligence, recklessness, willfulness, wantonness, and carelessness, Plaintiff suffered, and continues to suffer from embarrassment, humiliation, mental anguish, anxiety, and physical mutilation, all to Plaintiff's further detriment, in a sum to be shown according to proof.

## SECOND CLAIM FOR RELIEF

## Strict Products Liability – Failure to Warn

**(Plaintiff JENNIFER KERNS  as to ALL DEFENDANTS and DOES 1-10)**

62.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein.

63.     At all relevant times, Defendants and Does 1-10 were in the business of and did design, develop, formulate, manufacture, test, package, promote, label, advertise, market, instruct on, distribute, supply and/or sell products and blenders marketed under the NutriBullet and MagicBullet brand names.  These products are intended for use as household blenders.

64.     Defendants placed the NutriBullet blenders, including the blender used by Plaintiff, into the stream of commerce.

COMPLAINT FOR DAMAGES

65.    The NutriBullet blenders were defective at the time they were placed into the stream of commerce by Defendants in that: 1) the blenders, including the blender at issue in the litigation, had inadequate warnings or instructions; 2) Defendants knew about but failed to inform consumers of the risks presented, thereby preventing consumer, including Plaintiff, from eliminating or reducing the risk; 3) the NutriBullet blenders failed to provide adequate safe-use instructions; and 4) Defendants knew or should have known that the NutriBullet blenders were unreasonably dangerous in that it created a substantially increased risk of serious bodily harm to reasonably foreseeable consumers, including Plaintiff, and Defendants failed to adequately warn of such increased risk.

66.    The NutriBullet blenders, including the blender at issue herein, were also defective because of inadequate post-marketing warnings or instructions because Defendants failed to provide adequate warnings to consumers after Defendants knew or should have known of the risk of serious bodily harm from the intended or foreseeable use of their products.

67.    As a direct and proximate cause of Defendants' failure to provide adequate warnings, Plaintiff was injured while using the product in an intended and foreseeable manner.

68.    As a direct and proximate result of said defect(s), Plaintiff was required to seek, and continues to seek medical treatment for her severe and permanent injuries, all to Plaintiff's further detriment, in a sum to be shown according to proof.

69.    Consequently, by reason of said defect(s), Plaintiff was unable to perform her job and has incurred, and will continue to incur, a loss of income, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses all the Plaintiff's further detriment in a sum according to proof.

70.    As a direct and proximate result of said defect(s), Plaintiff suffered, and continues to suffer from embarrassment, humiliation, mental anguish, anxiety, and

COMPLAINT FOR DAMAGES

1  physical mutilation, all to Plaintiff's further detriment, in a sum to be shown

2  according to proof.

3    71.    Plaintiff is informed and believes and thereon alleges that Defendants

4  jointly and severally were aware of the defective conditions of their products,

5  including the subject NutriBullet 600 blender, but failed to take any corrective

6  actions, thereby making them liable for oppression, fraud or malice as defined by

7  *California Civil Code* § 3294 and subject to punitive damages, and pursuant to *State*

8  *Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423-424 (2003).

9              **THIRD CLAIM FOR RELIEF**

10          **Strict Liability – Manufacturing Defect**

11  **(Plaintiff JENNIFER KERNS  as to ALL DEFENDANTS and DOES 1-10)**

12    72.    Plaintiff incorporates by reference all other paragraphs of this

13  complaint as if fully set forth herein.

14    73.    At all relevant times, Defendants and Does 1-10 were in the business

15  of and did design, develop, formulate, manufacture, test, package, promote, label,

16  advertise, market, instruct on, distribute, supply and/or sell products and blenders

17  marketed under the NutriBullet and MagicBullet brand names.  These products are

18  intended for use as household blenders.

19    74.    Defendants placed the NutriBullet blenders, including the blender used

20  by Plaintiff, into the stream of commerce.

21    75.    The NutriBullet blenders, including the blender at issue herein,

22  contained a manufacturing defect at the time it left Defendants' possession.

23  Specifically, the NutriBullet blender used by Plaintiff had a manufacturing defect in

24  that it causes an explosion in the form of over-pressurization of the canister leading

25  to separations between the canister and blade assembly in normal use without

26  warning to the user.  This defect caused Plaintiff's severe injuries.

27    76.    Plaintiff was harmed by the NutriBullet blender as Plaintiff was

28  preparing a golden milk latte consisting of Gaia brand Golden Milk mix, maple

syrup, Thorn brand collagen powder, and water. During this process, the canister suddenly and unexpectedly exploded, as a result of the built-up pressure, causing the exposed still-spinning blades to mangle Plaintiff's right pinky.

77.    The manufacturing defects in the NutriBullet blenders were the direct and proximate cause(s) of Plaintiff's injuries described herein.

78.    As a direct and proximate result of said manufacturing defect(s), Plaintiff was required to seek, and continues to seek medical treatment for her severe and permanent injuries, all to Plaintiff's further detriment, in a sum to be shown according to proof.

79.    Consequently, by reason of said manufacturing defect(s), Plaintiff was unable to perform her job and has incurred, and will continue to incur, a loss of income, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses all the Plaintiff's further detriment in a sum according to proof.

80.    As a direct and proximate result of said manufacturing defect(s), Plaintiff suffered, and continues to suffer from embarrassment, humiliation, mental anguish, anxiety, and physical mutilation, all to Plaintiff's further detriment, in a sum to be shown according to proof.

81.    Plaintiff is informed and believes and thereon alleges that Defendants jointly and severally were aware of the defective conditions of their products, including the subject NutriBullet 600 blender, but failed to take any corrective actions, thereby making them liable for oppression, fraud or malice as defined by *California Civil Code* § 3294 and subject to punitive damages, and pursuant to *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423-424 (2003).

COMPLAINT FOR DAMAGES

# FOURTH CLAIM FOR RELIEF

## Strict Liability – Design Defect

**(Plaintiff JENNIFER KERNS  as to ALL DEFENDANTS and DOES 1-10)**

82.    Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein.

83.    At all relevant times, Defendants and Does 1-10 were in the business of and did design, develop, formulate, manufacture, test, package, promote, label, advertise, market, instruct on, warn about, distribute, supply and/or sell products and blenders marketed under the NutriBullet and MagicBullet brand names. These products are intended for use as household blenders.

84.    Defendants placed the NutriBullet blenders, including the blender used by Plaintiff, into the stream of commerce.

85.    The NutriBullet blenders and the component parts contained a design defect when the blenders left Defendants' possession because the blenders, including the blender at issue herein, would not operate safely as an ordinary consumer would have expected at the time of use, in that: 1) the normal operation of the blender creates friction and heat which creates pressure, and then causes the closed canister to over-pressurize; 2) the over-pressurized canister separates from the blade assembly causing either the contents of the canister to erupt, burning the user, or exposes the user to still-spinning blades which can cut or lacerate the user or cause both burns and lacerations.

86.    An ordinary consumer such as Plaintiff, would not have expected the NutriBullet blenders to over-pressurize during its intended use which led to burns and/or lacerations.

87.    Furthermore, upon information and believe, the subject blender was defectively designed because it can continue to operate on its own without any internal mechanisms to prevent it from shutting off, which made the blender unreasonably dangerous to its user.

COMPLAINT FOR DAMAGES

88.    Plaintiff was harmed by the NutriBullet blender as Plaintiff was preparing a golden milk latte consisting of Gaia brand Golden Milk mix, maple syrup, Thorn brand collagen powder, and water. During this process, the canister suddenly and unexpectedly exploded, as a result of the built-up pressure, causing the exposed still-spinning blades to mangle Plaintiff's right pinky.

89.    The design defect(s), described above, in the NutriBullet blenders was the direct and proximate cause of Plaintiff's injuries described herein.

90.    As a direct and proximate result of said design defect(s), Plaintiff was required to seek, and continues to seek medical treatment for her severe and permanent injuries, all to Plaintiff's further detriment, in a sum to be shown according to proof.

91.    Consequently, by reason of said design defect(s), Plaintiff was unable to perform her job and has incurred, and will continue to incur, a loss of income, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses all the Plaintiff's further detriment in a sum according to proof.

92.    As a direct and proximate result of said design defect(s), Plaintiff suffered, and continues to suffer from embarrassment, humiliation, mental anguish, anxiety, and physical mutilation, all to Plaintiff's further detriment, in a sum to be shown according to proof.

93.    Plaintiff is informed and believes and thereon alleges that Defendants jointly and severally were aware of the defective conditions of their products, including the subject NutriBullet 600 blender, but failed to take any corrective actions, thereby making them liable for oppression, fraud or malice as defined by *California Civil Code* § 3294 and subject to punitive damages, and pursuant to *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423-424 (2003).

COMPLAINT FOR DAMAGES

1
2
3

## FIFTH CLAIM FOR RELIEF

## Breach of Implied Warranty of Merchantability

## (Plaintiff JENNIFER KERNS  as to ALL DEFENDANTS and DOES 1–10)

4
5

94.    Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein.

6
7
8
9
10

95.    At all relevant times, Defendants and Does 1-10 were in the business of and did design, develop, formulate, manufacture, test, package, promote, label, advertise, market, instruct on, distribute, supply and/or sell products and blenders marketed under the NutriBullet and MagicBullet brand names. These products are intended for use as household blenders.

11
12
13
14
15

96.    Plaintiff is informed and believes and thereon alleges that Defendants impliedly warranted to Plaintiff that the NutriBullet blenders, including Plaintiff's NutriBullet blender, was of merchantable quality and safe when used for its intended purpose, which was to mix and blend food safely under reasonably foreseeable conditions, including the incident described herein.

16
17

97.    Plaintiff relied on Defendants' skill, judgment, and implied warranties when using the NutriBullet blender in a reasonably foreseeable manner.

18
19
20

98.    As a direct and proximate result of Defendants' breach of the implied warranties for the NutriBullet 600, and despite Plaintiff's reasonable and foreseeable use of the subject NutriBullet 600 blender, Plaintiff was injured.

21
22
23
24

99.    The product was unsafe for its intended purpose, and was not of merchantable quality, as impliedly warranted by Defendants. The NutriBullet was further lacking in warning(s) of such dangerous propensities that were both known or reasonably knowable at the time of its distribution.

25
26
27

100.   On May 5, 2022, Plaintiff's NutriBullet blender was in substantially the same condition as when it was originally designed, developed, tested, packaged, labeled, sold, and distributed by Defendants.

28

COMPLAINT FOR DAMAGES

101.   Despite using the subject NutriBullet 600 blender for its intended purpose, Plaintiff was injured.

102.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff was required to seek, and continues to seek medical treatment for her severe and permanent injuries, all to Plaintiff's further detriment, in a sum to be shown according to proof.

103.   Consequently, by reason of Defendants' breach of the implied warranty of merchantability, Plaintiff was unable to perform her job and has incurred, and will continue to incur, a loss of income, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses all the Plaintiff's further detriment in a sum according to proof.

104.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff suffered, and continues to suffer from embarrassment, humiliation, mental anguish, anxiety, and physical mutilation, all to Plaintiff's further detriment, in a sum to be shown according to proof.

### SIXTH CLAIM FOR RELIEF

### Violation of the Cal. Bus. & Prof. Code § 17200, *et seq.*

**(Plaintiff JENNIFER KERNS  as to ALL DEFENDANTS and DOES 1–10)**

105.   Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein.

106.   *Business & Professions Code*, § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Defendants' conduct, as described above, is unlawful, unfair and fraudulent in violation of the statute.

107.   Defendants' acts and practices are unlawful because they violate *Civil Code* §§ 1572, 1709, 1710, and 1770(a)(5) and/or 1770(a)(7), as well as common law.

COMPLAINT FOR DAMAGES

108. Defendants violated the UCL when they concealed and/or failed to disclose the known defects in the NutriBullet blenders to members of the public, in violation of the California Consumer Legal Remedies Act ("CLRA").

109. Defendants violated the UCL by failing to disclose a substantially injurious defect to consumers, contrary to "established public policy" of the CLRA.

110. Defendants violated the UCL by fraudulently concealing and intentionally failing to disclose to Plaintiff the defective nature of the NutriBullet blenders, in violation of common law.

111. Defendants violated the UCL by actively concealing and omitting from its marketing and other communications, material information about the NutriBullet blenders, including the blender used by Plaintiff, in a manner that has deceived and is likely to deceive consumers and the public.

112. Defendant violated the UCL by selling NutriBullet blenders that were defective in design and manufacture.

113. Defendants violated the UCL by holding the NutriBullet blenders out as safe.

114. The financial injury and risk of personal safety to consumers by Defendants' conduct greatly outweighs any alleged countervailing benefit to consumers of competition under all of the circumstances. The fraudulent conduct described herein was known to, and authorized by Defendants' officers, directors and managing agents.

115. The injury to consumers by Defendants' conduct is not an injury that consumers themselves could reasonable have avoided because of Defendants' concealment of material fact.

116. To this day, and in addition to failing to disclose the defect, Defendants continue to violate the UCL by continuing to actively conceal the material information regarding the defective nature of the NutriBullet blenders, and by failing to disclose that NutriBullet blenders are both defective and dangerous.

117.   In addition to failing to disclose the defect, Defendants' advertising campaigns also violated the UCL. Throughout the relevant time period, Defendants engaged in a long-term advertising campaign that was likely to deceive members of the public by failing to disclose the material fact that NutriBullet blenders are defective, and to the contrary, advertised that the product was an integral part of a healthy lifestyle.

a.   Specifically, Defendants' NutriBullet commercials that are broadcast on television (for example, the advertisement available at https://www.youtube.com/watch?v=hfWHl8xnxV8) fail to contain warnings regarding the potential for the NutriBullet blenders to cause severe personal injury, notwithstanding that Defendants are clearly aware of the dangerous propensity of their products, have had advanced knowledge of the unfitness of their product and knowingly disregarded the rights and safety of the public.

b.   Similarly, Defendants' advertisements through videos publicly available on its Facebook page (https://www.facebook.com/thenutribullet/) fail to contain warnings regarding the potential for the NutriBullet blenders to explode and cause severe personal injury.

c.   Additionally, Defendants' advertisements through videos publicly available on its YouTube page (https://www.youtube.com/user/thenutribullet/featured) fail to contain warnings regarding the potential for the NutriBullet blenders to explode and cause severe personal injury.

118.   As a direct and proximate cause of Defendants' acts, which constituted violations under the unlawful, unfair and fraudulent prongs of the UCL, Plaintiff has suffered injury in fact and lost money.

119.   Moreover, Plaintiff faces unsafe conditions as a result of the defective nature of the NutriBullet blenders.

COMPLAINT FOR DAMAGES

120.    Plaintiff has lost money and suffered injuries in fact because, had Defendants disclosed the true defective nature of the NutriBullet blenders, Plaintiff would not have lost money from the purchase of the machine or incurred medical expenses resulting from the injuries suffered while using the blender.

121.    As a proximate result of Defendants' violation of the UCL, Defendants have been unjustly enriched and should be required to repair the defective NutriBullet blenders and make restitution to Plaintiff.

122.    Plaintiff demands judgment against Defendants for injunctive relief in the form of restitution, along with injunctive relief in the form of replacement of Plaintiff's NutriBullet blender with units displaying appropriate warnings, attorneys' fees and costs pursuant to, *inter alia*, *Code of Civil Procedure* § 1021.5.

123.    Plaintiff also demands judgment against Defendants for injunctive relief requiring distribution to all NutriBullet consumers of warnings regarding the NutriBullet's inherent dangers, attorneys' fees and costs pursuant to, *inter alia*, *Code of Civil Procedure* § 1021.5.

124.    Plaintiff provided notice of her claim to Defendants under CLRA § 1782 subd.(a)

125.    Defendants have refused to provide the requested relief or restitution pursuant to Plaintiff's claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against all Defendants, and each of them, for each cause of action, as follows:

1.    For all special damages including but not limited to, reimbursement of medical and other related bills, and future medical bills. ;

2.    For all general damages including but not limited to, damages for pain, suffering, anguish, discomfort, severe emotional distress, disgust, terror, fright, anger, anxiety, worry, nervousness, shock, anguish and mental suffering, loss of

COMPLAINT FOR DAMAGES

enjoyment of life, loss of ability to engage in normal and customary activities, loss of comfort, society, care and companionship;

3.    For punitive and exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

4.    An order requiring Defendants to immediately provide to all NutriBullet blender consumers notice of the inherent dangers of the NutriBullet blenders, and adequate warnings which will prevent future injuries through its advertising;

5.    Reasonable costs and attorneys' fees;

6.    Statutory pre-judgment interest;

7.    For other and further special damages in a sum according to proof at the time of trial;

8.    For other and further general damages in a sum according to proof at the time of trial; and

9.    For such other and further relief as the court deems just and proper.

Dated: March 8, 2024          **ABIR COHEN TREYZON SALO, LLP**



By:    _/s/ Boris Treyzon_____
Boris Treyzon, Esq.
Douglas Rochen, Esq.
Katrina N. Yu, Esq.
Evan Koncan, Esq.
Attorneys for Plaintiff

COMPLAINT FOR DAMAGES

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in the instant action on all stated claims for relief.

Dated: March 8, 2024          **ABIR COHEN TREYZON SALO, LLP**

By:  _____ */s/ Boris Treyzon*_____
Boris Treyzon, Esq.
Douglas Rochen, Esq.
Katrina N. Yu, Esq.
Evan Koncan, Esq.
Attorneys for Plaintiff

COMPLAINT FOR DAMAGES